Gross, J.
This case involves the reasonableness of a deposit and special service charge required by a supervisor of elections for a public records request concerning election ballots. We hold that the charge was “reasonable” under Florida’s Public Records Act and affirm the final summary judgment entered against a plaintiff seeking relief under the Act.
In 2014, Appellant W. Michael Trout was a write-in candidate for Florida’s 21st Congressional District. After the election, on November 7, 2014, Trout submitted an email public records request to Palm Beach County Supervisor of Elections Susan Bucher, seeking to inspect the official ballots associated with his congressional race “at the earliest reasonable time possible, including ballots deemed to be cast in [Trout’s] name, and those deemed by [the Supervisor’s] office to be invalidated.”
Six days later, the Supervisor responded to Trout’s request, advising that (1) a de *878 posit of $189.21 was required to inspect the ballots and (2) there would be an hourly fee of the same amount. The Supervisor explained that there were 145,881 ballots within 211 precincts cast in the 21st Congressional District. The Public Records Act permits a'special service charge based on extensive clerical or supervisory assistance required in response to a public records request. § 119.07(4)(d), Fla. Stat. (2014). Additionally, section 119.07(5) states that when ballots are produced for inspection or examination, “no persons other than the supervisor of elections or the supervisor’s employees shall touch the ballots.”
The Supervisor believed that herself and 3 additional employees were needed to handle Trout’s request. The quoted hourly fee was the sum of the hourly rates of these employees, broken down as follows: Supervisor $107.41/hour, Assistant to Supervisor $27.87/hour, and two Election Specialists, one at $26.77/hour and the other at $27.16/hour. The Supervisor asked Trout to be more specific in his records request and advised that her office would begin locating the requested ballots after Trout paid a $189.21 deposit.
Trout refused to pay the deposit and filed suit to enforce the Public Records Act. His complaint focused on the $189.21 hourly fee. He contended that, as a matter of law, the rates quoted by the supervisor were “illegal as agencies are only allowed to base any special service charges on reasonable charges actually incurred by the agency but based on the lowest paid person who could possibly do the work.” He sought a declaration that the Supervisor “must base the special service charge on the labor cost of the lowest paid employee capable of supervising [Trout’s] inspection.” Based on the hourly rates quoted by the Supervisor, Trout asked the court to declare the permissible hourly rate to be $26.77, so that the charge for the Supervisor and three employees would be $107.08/hour.
Both sides moved for summary judgment, since the salient facts were largely undisputed.
The circuit court granted the Supervisor’s motion for summary judgment. In a thoughtful order, the court observed that, unlike some of the cases cited by Trout, this case dealt with unique public records that go “to the heart of our democracy”— the actual, physical ballots cast in the November 4, 2014 general election. The court correctly noted that “[mjaintaining the integrity of the actual ballots and preventing anyone from tampering with them is a critical matter of public interest.” The Act acknowledges this issue in section 119.07(5), which provides that when ballots are produced under the Act for inspection and examination, “no persons other than the supervisor of elections or the supervisor’s employees shall touch the ballots.” Thus, production of the ballots involved holding the ballots in front of Trout, one by one, for him to visually inspect. The court correctly concluded that the “nature of the public records to be inspected must be considered in evaluating the reasonableness of the service charge required by the Supervisor.”
Trout does not dispute the reasonableness of the Supervisor’s participation in the production and the number of employees she proposes to use. This case focuses on a single issué — whether the fee quoted by the Supervisor was “reasonable” within the meaning of section 119.07(4). That section of the public records act provides:
If the nature or volume of public records requested to be inspected or copied pursuant to this subsection is such as to require extensive use of information technology resources or extensive cleri *879 cal or supervisory assistance by personnel of the agency involved, or both, the agency may charge, in addition to the actual cost of duplication, a special service charge, which shall be reasonable and shall be based on the cost incurred for such extensive use of information technology resources or the labor cost of the personnel providing the service that is actually incurred by the agency or attributable to the agency for the clerical and supervisory assistance required, or both.
§ 119.07(4)(d) (emphases added). There is no dispute that Trout’s request required “extensive clerical or supervisory assistance by personnel” of the Supervisor. The legislature’s obvious reason for allowing the service charge in section 119.07(4)(d) is to prevent taxpayers from “shoulder[ing] the entire expense of responding to an extensive request for public records.” Bd. of Cty. Comm’rs of Highlands Cty. v. Colby, 976 So.2d 31, 37 (Fla. 2d DCA 2008). A limitation on the service charge is that it must be reasonable, because an excessive charge “could well serve to inhibit the pursuit of rights conferred by the Public Records Act.” Carden v. Chief of Police, Clewiston Police Dep’t, 696 So.2d 772, 773 (Fla. 2d DCA 1996).
To agree with Trout’s position— that the Supervisor must charge no more than the lowest hourly rate of the employee capable of performing the work — would require us to rewrite section 119.07(4)(d). That section allows the use of the “labor cost of the personnel providing the service that is actually incurred by the agency or attributable to the agency for the clerical and supervisory assistance required.” Trout would have us ignore the words “actually incurred ... or attributable” and insert language limiting a service charge to the lowest hourly rate of the employee capable of performing the work. A court is “not at liberty to add words to statutes that were not placed there by the Legislature.” Hayes v. State, 760 So.2d 1, 4 (Fla.1999).
We agree with the circuit court that the proposed charge by the Supervisor was “reasonable” within the meaning of section 119.07(4)(d).
Warner and Forst, JJ., concur.